## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ANTHONY C. WISHAM,**

        **Petitioner,**

**v.**

**THE UNITED STATES OF AMERICA,**

        **Respondent.**

**Case No. 23-CV-00027-SPM**

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Petitioner Anthony C. Wisham, an inmate incarcerated at the Federal Correctional Institution in Oakdale, Louisiana, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Within the motion, Wisham raises various ineffective assistance of counsel arguments. (*See id.*). The Government filed a Response (Doc. 29) to which Wisham replied (Doc. 30). For the following reasons set forth, the Petition is **DENIED**.

### RELEVANT FACTS AND PROCEDURAL HISTORY

On September 17, 2021, absent a plea agreement, Wisham pleaded guilty to distribution of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 1 and 2); possession with intent to distribute cocaine in violation of 18 U.S.C. § 922(g)(1) (Count 3); and being a felon in possession of a firearm in violation of 18 § U.S.C. 924(a)(2) (Count 4). *See United States v. Anthony C. Wisham,* No. 21-cr-30027 (S.D. Ill. 2022), (Doc. 29, p. 3) [hereinafter *Criminal Case*]. This Court sentenced

Wisham to 135 months each for Counts 1–3 and 120 months as to Count 4, with all counts to run concurrently. *Criminal Case*, (Doc. 39, p. 3).

Wisham filed the instant § 2255 Petition attacking his sentence on December 27, 2022. (*See* Doc. 1). In his Petition, Wisham raises various claims of ineffective assistance of counsel—specifically, he argues that his counsel (Attorney Paul Sims) was ineffective because counsel failed to object to Wisham's criminal history falling within Category III (Claim One), counsel failed to object to the dangerous weapon enhancement application (Claim Two), counsel failed to pursue a two-point level reduction pursuant to the safety valve provision (Claim Three), and counsel failed to consult with Wisham about his right to appeal (Claim Four). (*See* Doc. 1). The Government filed a Response to Wisham's Petition. (Doc. 29). Wisham also filed a Reply. (Doc. 30).

## APPLICABLE LEGAL STANDARDS

Relief under 28 U.S.C. § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 may be used only to correct errors that litigate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. The United States Court of Appeals for the Seventh Circuit has emphasized that relief under § 2255 is "available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878 (7th Cir. 2013) (quoting *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996)); *see Harris v. United States*, 366 F.3d 593, 594 (7th Cir.

2004); *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). Section 2255 cannot be used as a substitute for a direct appeal or to relitigate issues decided on direct appeal. *See Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004); *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003), *cert. denied*, 540 U.S. 926 (2003).

Section 2255 requires a court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court to essentially reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007).

## ANALYSIS

Wisham raises claims of ineffective assistance of counsel, which may be brought for the first time under a § 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. James*, 635 F.3d 909, 916 (7th Cir. 2011). Ineffective assistance of counsel claims are evaluated under the two-prong test first enumerated in *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984). *See McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 690, 694). "The Sixth Amendment right of effective assistance of counsel applies to a criminal defendant's

trial, sentencing, and the first appeal of right." *Jones v. Welborn,* 877 F. Supp. 1214, 1219 (S.D. Ill. 1994).

Under *Strickland*, the defendant "must demonstrate: (1) 'that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.'" *Thompson v. Vanihel,* 998 F.3d 762, 767 (7th Cir. 2021) (quoting *Strickland*, 466 U.S. at 687). To satisfy the performance prong, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To prove prejudice, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong will be fatal to the claim. *See Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir. 1990).

## I.    Failure of Counsel to Object to Application of Criminal History Category III

Wisham's first claim is that his counsel was ineffective for failing to object to the application of Criminal History Category III.   (*See* Doc. 1, pp. 1–2). Wisham received two criminal history points for possession of a controlled substance from an arrest on March 22, 2009, for which he was later sentenced to one year of imprisonment. *Criminal Case*, (Doc. 29., ¶ 56). Wisham received an additional two criminal history points for possession of a controlled substance from an arrest on September 30, 2011, for which he was later sentenced to one year of imprisonment.

*Id.*, (Doc. 29., ¶ 57). Wisham received a total of four criminal history points from his previous sentences, which resulted in the application of a Criminal History Category III in accordance with the United States Sentencing Guidelines. *See* U.S. Sent'g Guidelines Manual § 5A (U.S. Sent'g Comm'n 2023) [hereinafter Sentencing Guidelines].

Wisham argues that his counsel should have objected to the two points from his arrest on March 22, 2009 because offenses that result in more than sixty (60) days but less than thirteen (13) months of imprisonment are not counted towards the criminal history category if the sentence was imposed more than ten (10) years prior to the "commencement of the instant offense." *See* Sentencing Guidelines § 4A1.1 cmt. n.2, (Doc. 1, pp. 1–2). The Government argues that Wisham's "claim is factually and legally incorrect and Attorney Sims was not deficient for not objecting to Petitioner's Wisham's receiving two criminal history points" because "the date for this conviction is incorrect as stated in the PSR" and his prior conviction was within ten (10) years of the criminal conduct at issue here. (Doc. 29, pp. 6–7).

While Wisham was *arrested* from the previous offense on March 22, 2009, he was not *sentenced* until July 28, 2011.[1] The distinction between Wisham's previous arrest and the resulting sentencing from that arrest is critical; the applicable time period used to compute a criminal history category includes any other prior *sentence*

---

[1] *See State of Illinois v. Anthony C. Wisham*, No. 2009-CF-000236 (2009), http://records.sangamoncountycircuitclerk.org/sccc/DisplayDocket.sc (last visited June 25, 2024) (navigate to "Case Search," then search for "Anthony Wisham," and select case "2009-CF-000236"). The date of Wisham's sentencing was erroneously listed as March 25, 2009 in his Presentence Investigation Report. *See Criminal Case*, (Doc. 29, ¶ 56).

that was imposed within ten (10) years of the defendant's commencement of the current offense. *See* Sentencing Guidelines § 4A1.2(e)(2). Wisham's current offense and any relevant conduct began in September 2020. *Criminal Case*, (Doc. 29, ¶ 21). Therefore, Wisham correctly received two criminal history points from his first possession of a controlled substance conviction because his sentence (imposed on July 28, 2011) was within ten (10) years of the commencement of the current offense in September 2020. For these reasons, Wisham's counsel was not constitutionally ineffective for failing to make what would have been a frivolous argument. Therefore, Wisham's first claim fails.

## II.    Failure of Counsel to Object to Dangerous Weapon Enhancement

Wisham next claims that his counsel was ineffective for failing to object to a dangerous weapon enhancement application based on a finding that Wisham possessed a firearm in connection with his drug offense. (*See* Doc. 1, pp. 2–5). This finding subsequently disqualified Wisham from safety-valve relief. *See infra* Section III.

After Wisham was arrested, DEA agents conducted a search of his apartment and recovered a .38 caliber Derringer pistol from underneath a pillow in his bedroom and a 9-millimeter Taurus pistol loaded with a high-capacity magazine from inside a jacket in his bedroom closet. *Criminal Case*, (Doc. 29, ¶ 17). Furthermore, Wisham had previously used his bedroom to retrieve fentanyl for distribution. *Id.*, (Doc. 29, ¶ 12). While Wisham argues that these weapons were present for self-defense (*see* Doc. 1, pp. 16–17, 20, 22), the Government argues that "there is nothing to support Petitioner Wisham's self-serving claim that these firearms were present strictly for

self-defense" and that "argument is made too late and is unsupported by the record," meaning that "his sentencing enhancement was properly applied, Attorney Sims, who researched this issue prior to sentencing, was not deficient for not objecting to its application to Petitioner Wisham's Base Offense Level, and Petitioner Wisham was not prejudiced." (Doc. 29, p. 9 (citations omitted)).

Wisham also argues in his Reply (Doc. 30) that "<u>any</u> weapons enhancement that is incurred in addition to the gun charge is double counting and/or double jeopardy in a sense." (*Id.*, p. 2). He seems to argue that his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(a) already addressed the possession a weapon and that his sentence should not be enhanced in accordance with § 2D1.2(b)(1). (*See* Doc. 30, p. 2). Wisham states that the "enhancement applies only '<u>if a weapon was possessed during the offense</u>,'" which he claims is not applicable here. (*Id.*). He also argues that he did not have the gun during the drug transactions in question, that the informant did not see a gun on Wisham, and that this is a "stretch" of § 2D1.2(b)(1) of the Sentencing Guidelines.

The Sentencing Guidelines indicate that the dangerous weapon enhancement associated with a drug charge "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Sentencing Guidelines § 2D1.1 cmt. 11(1). As an example, the Sentencing Guidelines state that "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." *Id.* The government is required to prove by a preponderance of the evidence "that the defendant possessed

a weapon either actually or constructively, meaning he 'had the power and the intention to exercise dominion or control of the firearm.'" *United States v. Thurman*, 889 F.3d 356, 372 (7th Cir. 2018) (quoting *United States v. Morris*, 836 F.3d 868, 872 (7th Cir. 2016)). If the Government meets this burden, the burden shifts to the defendant to prove that it is "clearly improbable [that] he possessed the weapon in connection with the drug offense." *Id.*

The Seventh Circuit has "stated repeatedly that 'guns found in close proximity to drug activity are presumptively connected to that activity.'" *Id.* (quoting *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005)); *see United States v. Fincher,* 924 F.3d 501, 505 (7th Cir. 2019). In *Fincher*, the District Court found that a seized firearm was connected to the drug offense because the firearm "was kept loaded and in a readily accessible place," and in close proximity to the drug stash. 929 F.3d at 506. Comparing the instant facts to *Fincher*, the Taurus found in Wisham's bedroom was loaded, readily accessible, and located near the fentanyl he retrieved on September 15, 2020 for sale to the confidential informant, who met Wisham at this same apartment. *See Criminal Case*, (Doc. 29, ¶¶ 12, 17); *Fincher*, 929 F.3d at 506. Moreover, as discussed in the Sentencing Guidelines and in *Fincher*, the weapon at issue was a handgun, instead of a "hunting gun," which would "suggest it had a purpose unrelated to the offense." *Fincher* at 506; *see* Sentencing Guidelines § 2D1.1 cmt. 11(1). Thus, the government has met its burden under the preponderance of the evidence standard to connect the firearms to the charged crime.

The burden thus shifts to Wisham to prove that it is "clearly improbable" that the firearms in question were connected to drug trafficking. In his Petition, Wisham includes a Motion to Expand the Record in which he argues that a newspaper clipping from the Illinois Monitor provides an alternate motive for him to possess a firearm for self-defense (because his girlfriend's brother Kein Henderson was kidnapped). (*See* Doc. 1, pp. 16–17, 20, 22). However, Kein Henderson was kidnapped in his own grandmother's house, not from Wisham's residence. (*See id.*, pp. 16–17). Moreover, Wisham's Petition argues that it was "speculated in the neighborhood" that the kidnappers would "kill the Eastman family if the Eastmans pursued a police investigation." (*See id.*). He alleges that he purchased the firearms in December of 2020 after the kidnapping in August, but also argues that he was a victim of gun violence in 1986. (*See id.*, p. 16). While Wisham was romantically involved with Kein's sister, his argument that he obtained firearms for protection unrelated to his drug sales are not convincing, especially since he claims that a prior gun injury from gun violence from thirty-four years before contributed to him acquiring the weapons at issue in 2020. (*See id.*).

Wisham argues in his Reply that it is a "stretch" of § 2D1.1 of the Sentencing Guidelines to link the weapons in question to the drug transactions at issue here. (*See* Doc. 30, p. 2 (citing *United States v. Ramirez*, 783 F.3d 687 (7th Cir. 2015))). However, *Ramirez* does not help Wisham; in that case, the Seventh Circuit upheld the district court's individualized assessment that it was foreseeable for firearms to be present in stash houses for a drug ring for which the plaintiff worked as a

bookkeeper. *See Ramirez* at 690–92. Similarly to *Ramirez*, the defendant in *Thurman* unsuccessfully argued that firearms found in a house where he stored drugs "were not within the immediate vicinity of his drug operations, such that he did not exercise control over them for purposes of constructive possession." 889 F.3d at 372. Thurman claimed that he "procured the guns many years earlier for reasons unrelated to drug sale." *Id.* Wisham does not argue that he obtained the firearms years before—in fact, he argues the opposite. (*See* Doc. 1, p. 16). Wisham's only argument here is that he did not have the weapons on his person during the drug transactions. However, as the Government notes, the loaded guns were in his bedroom where he stored drugs, which is sufficient to link them to Wisham's drug trafficking enterprise. (*See* Doc. 29, pp. 7–9).

In summary, Wisham does not meet his burden to prove that it is "clearly improbable" that the weapons were associated with drug trafficking. Wisham's arguments do not meet the required standard and, thus, his counsel was not ineffective for not raising them. Therefore, his second claim also fails.

## III.   Failure of Counsel to Pursue Safety-Valve Relief

Wisham next argues that his counsel was constitutionally ineffective for failing to pursue relief under the safety-valve provision. (*See* Doc. 1, pp. 5–6). The Government argues that Wisham's arguments are "legally incorrect" and that Wisham's counsel was not deficient for failing to object at Wisham's sentencing. (Doc. 29, p. 8).

The safety-valve provision permits the court to sentence a defendant "without regard to any statutory minimum sentence" accompanying certain drug-related offenses if the defendant meets five criteria: (1) his or her criminal history is minimal (no "more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense" and no three-point offenses or violent two-point offenses); (2) he or she did not use or threaten violence or possess a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) he or she was not an "organizer, leader, manager, or supervisor or others in the offense"; and (5) he or she truthfully provided all information and evidence about the offense to the government before the sentencing hearing. Sentencing Guidelines § 5C1.2 (citing 18 U.S.C. § 3553(f)); *see United States v. Stamps,* 983 F.3d 945, 949 (7th Cir. 2020).

It is the second factor (whether Wisham possessed a firearm in connection with his offense) that is at issue in Claims Two and Three. (*See* Doc. 1, pp. 14–18). Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level enhancement if Wisham possessed a firearm in connection with the offense. Therefore, Wisham's two-level enhancement and eligibility for safety-valve relief are interrelated, with both depending on whether Wisham possessed a firearm in connection with his drug offense.

The burden of proof for the two-level enhancement and safety-valve relief are different. *United States v. Fincher,* 924 F.3d 501, 505 (7th Cir. 2019). To qualify for safety-valve eligibility, Wisham must prove by a preponderance of the evidence that

he did not possess the firearm in connection with the offense. *Id*. This is thus a lower burden than the "clearly improbable" standard associated with the two-level enhancement discussed above. *See supra* Section II.

The Seventh Circuit was clear in *Stamps* that failing to meet the "clearly improbable" standard does not automatically mean that the petitioner fails under the preponderance of the evidence standard. *See Stamps*, 983 F.3d at 950; *see also Fincher*, 929 F.2d at 505. That being said, the reverse is true—if a petition fails to meet the preponderance of the evidence standard, he or she cannot then meet the higher "clearly improbable standard." *Stamps* makes it clear that the possession of the firearm must be separately evaluated under the preponderance of the evidence standard. *See Stamps* at 950.

Wisham argues that he is entitled to an evidentiary hearing to assess whether or not he can establish by the preponderance of the evidence standard that he did not possess the firearms in relation to the sale of drugs. (*See* Doc. 1, p. 6). While the Seventh Circuit has stated that this determination is a "fact-intensive inquiry," there is adequate information in the record to address Wisham's claim. *Stamps* at 950. While he cites *Stamps* as an example of there being "credible reasons for being in possession of the firearm," the facts before this Court are much closer to *Fincher* than to *Stamps*. *See Fincher* at 506; *Stamps* at 950. In *Stamps*, the defendant argued that the weapon in question was for his personal defense, as he had been wrongfully accused of murder and had received credible threats. *See id*. at 947 (Even though "Stamps officially cleared his name[,] . . . others in the community continued to hold

Stamps responsible for the murder and threatened to harm him in retribution. On one occasion, someone even fired shots into Stamps's apartment."). The weapons found in Wisham's apartment were in close proximity to where he stored drugs and were clearly not designed for hunting or for a purpose other than personal defense. While Wisham also claims that the firearms were for his protection, his Petition does not describe specific threats to him *personally*. Rather, the provided newspaper clipping only describes the kidnapping incident involving his girlfriend's brother at his girlfriend's grandmother's house and states that Wisham himself was a victim of firearm violence thirty-four years before acquiring the weapons. (See Doc. 1, pp. 16–17). Unlike in *Stamps*, Wisham does not provide a compelling reason for needing a firearm other than for protecting his drug supply. *See Stamps* at 947.

Therefore, Wisham has failed to show by a preponderance of the evidence that his possession of a firearm was not connected to the offense, and safety-valve relief was properly denied. Thus, Wisham's counsel was not constitutionally ineffective for failing to make a frivolous argument and Wisham's third claim fails.

## IV.   Failure of Counsel to Consult with Wisham Regarding His Right to Appeal

Wisham finally claims that his counsel was ineffective for failing to consult with Wisham regarding his right to appeal. (Doc. 1, pp. 5–6). By pleading guilty without a plea agreement, Wisham agreed to an unconditional guilty plea, which does not reserve any issues for purposes of an appeal. *See* Fed. R. Crim. P. 11; *Criminal Case*, (Doc. 29, ¶ 6). Additionally, the Government points to the transcript of Wisham's sentencing, in which this Court unquestioningly informed Wisham of his

right to an appeal and his right to be represented by counsel. (*See* Doc. 29, p. 10 (quoting *id.*, Ex. C., pp. 25–26)).

Wisham has provided no evidence—apart from bare assertions—to support his claim of his counsel's ineffective performance. The sort of evidence needed to prove ineffective assistance of counsel in negotiating a plea begins with sworn affidavits attesting to Wisham's allegations. *Galbraith v. United States,* 313 F.3d 1001, 1009 (2002); *see Duarte v. United States,* 81 F.3d 75, 76 (7th Cir. 1996) (basing § 2255 petition claims of ineffective assistance of counsel on petitioner's sworn affidavits). As it is clear that Wisham was apprised of his rights, the Government argues that the only remaining question is whether or not Wisham's attorney had a duty to consult with Wisham about an appeal. (*See* Doc. 29, p. 10). As the Supreme Court has stated:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). The Supreme Court continued, saying that "a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* Additionally, "[e]ven in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received

the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Wisham's counsel has provided an affidavit in which he states that "Defendant was informed of his rights, including his right to appeal at sentencing, Defendant did not inform Counsel of a desire to appeal, nor did he ask Counsel any questions in regards to said rights." (Doc. 29, Ex. 1, p. 4). Moreover, Wisham's counsel states that "I did not think there were non-frivolous grounds to appeal. I did not talk to Defendant after sentencing nor did I talk to his family and I don't recall anyone asking me about appeals. The sentence was within the guidelines and therefore I thought it was reasonable." (*Id.*). Therefore, "tak[ing] into account all the information counsel knew or should have known," *Flores-Ortega* at 480 (citing *Strickland* at 690), Attorney Sims did not have a duty to consult with Wisham about an appeal and, thus, his conduct was neither deficient nor prejudicial. Thus, Wisham's fourth claims fails, as well.

## V.   Evidentiary Hearing

Wisham has requested an evidentiary hearing on his claims, pursuant to § 2255(b). *See supra* Section III, (Doc. 1., p. 12). The Government opposes an evidentiary hearing. (*See* Doc. 29, pp. 11–12).

This Court finds that an evidentiary hearing is not essential. *See Almonacid,* 476 F.3d at 521 (7th Cir. 2007) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief the judge must dismiss the motion."). Wisham failed to provide the Court with

a detailed and specific affidavit that demonstrated the actual proof of the allegations in his § 2255 petition. *See Galbraith,* 313 F.3d at 1009 (7th Cir. 2002) ("It is the rule of the court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations that go beyond mere unsupported allegations."). Thus, this argument is meritless and Wisham's counsel will not be found constitutionally ineffective for failing to consult with Wisham about an appeal.

## CONCLUSION

For the reasons set forth above, Anthony C. Wisham's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**. This action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings in United States District Courts instructs the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. 2253(c)(2) provides that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."

To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming,* 676 F.3d

621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 281 (2004)); *see Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

As for his claims of ineffective assistance of counsel, Petitioner Wisham has not made a substantial showing of the denial of a constitutional right. Having thoroughly reviewed the record before the Court, the undersigned concludes that reasonable jurists would not find the disposition of that claim debatable or wrong. Accordingly, this Court **DENIES** issuance of a certificate of appealability.

**IT IS SO ORDERED.**

**DATED:  June 26, 2024**


<u>**s/ *Stephen P. McGlynn***</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**